UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANE M RIPBERGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-01394-TWP-MJD |
| ) | |
| CORIZON, INC., f/k/a Correctional Medical ) | |
| Services, Inc., ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON PENDING MOTIONS

This matter is before the Court on Defendant Corizon, Inc.'s ("Corizon"), Motion for Summary Judgment (Dkt. 56). Corizon has also filed a Motion to Strike Plaintiff Diane M. Ripberger's ("Ms. Ripberger"), Surreply (Dkt. 78). In turn, Ms. Ripberger has filed a Motion for Leave to File Amended Surreply (Dkt. 80), to which Corizon objects. In her Complaint, Ms. Ripberger claims Corizon discriminated against her because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2, and because of her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and that Corizon retaliated against her in violation of both Title VII and the ADEA. Corizon moves for summary judgment on each claim. For the reasons set forth below, Corizon's Motion for Summary Judgment (Dkt. 56) is **GRANTED**. Furthermore, Ms. Ripberger's Motion for Leave to File Amended Surreply (Dkt. 80) is **GRANTED**. Finally, because the Court has allowed the amended surreply, Corizon's Motion to Strike (Dkt. 78) is **DENIED as moot**; however, in this Entry, the Court will *sua sponte* address deficiencies in Ms. Ripberger's surreply.

## I. BACKGROUND

The Court finds the following pertinent facts undisputed.

### A. The Parties

Ms. Ripberger was born in 1951. In 2008 she began employment with the Indiana Department of Corrections ("IDOC") as a substance abuse counselor at the Pendleton Correctional Facility ("Pendleton") in Pendleton, Indiana. Ms. Ripberger had a bachelor's degree in sociology and more than 60 hours toward a master's degree in pastoral counseling. She also had a State of Indiana license as a social worker.

Corizon is a company that contracts with IDOC to provide various medical services to persons incarcerated in Indiana state prisons.

### B. Privatization of Substance Abuse Counseling Services

Prior to September 1, 2010, IDOC employed 93 substance abuse counselors who provided counseling services to inmates in prisons throughout Indiana. In the summer of 2010, IDOC entered into a contract with Corizon to outsource its substance abuse counseling services. The contract provided for only 88 substance abuse employees, requiring Corizon to eliminate several positions. A July 22, 2010 chart prepared by Corizon color coded employees based on their potential for hire. Ms. Ripberger was coded gray, which meant she had at least five years' experience and was "good to go" for continued employment.

The decision to privatize substance abuse counseling services was announced to IDOC counselors at a meeting on August 13, 2010. The employees were told they would no longer be employed by IDOC and that they could apply for positions with Corizon. Interviews were to be held and offers made during the week of August 16, 2010.

Corizon hired Mick Schoenradt ("Mr. Schoenradt"), Acting IDOC Substance Abuse Director, to supervise its substance abuse program; however, he did not officially become a Corizon employee until September 1, 2010. Corizon delegated the hiring and placement decisions to Mr. Schoenradt. Corizon intended to retain the IDOC substance abuse counselors within their current positions; however, its contract only allowed Corizon to employ 88 counselors, therefore Mr. Schoenradt had to determine which positions would be eliminated. To that end, Mr. Schoenradt created a do-not-hire list and a staffing plan based on the reduced number of positions and each facility's needs. Ms. Ripberger was not on the do-not-hire list. Her name was on the staffing plan alongside another counselor, Randy Smith, indicating that one or the other would be hired for an available position at Pendleton.

### C.     Ms. Ripberger's Employment with IDOC

Ms. Ripberger had previously worked for IDOC as a substance abuse counselor beginning in 1991. She left employment for a period of time and returned to IDOC in March 2008. In August 2010, Ms. Ripberger was a Substance Abuse Counselor IV, primarily serving Level 4 offenders in the Indiana Reformatory (the Reformatory") at Pendleton. Level 4 offenders have either committed serious or violent crimes, or are serving long sentences.

### D.     IDOC Substance Abuse Recovery Programs at Pendleton

In addition to serving Level 4 inmates in the Reformatory, IDOC provided substance abuse counseling for Level 1 offenders in the Outside Dorm ("OSD") at Pendleton. Additionally, IDOC provided services to a separate facility at Pendleton called the Community Industrial Facility ("CIF"). At CIF, substance abuse counselors and Level 2 and 3 inmates engaged in a therapeutic community.

In August 2010, IDOC employed seven substance abuse counselors at the Reformatory, OSD, and CIF. Three counselors, Avery Thomas, Joanne Massey-Neskov, and Anna Sasin, maintained a primary caseload at CIF. Three counselors, Diane Diggins, Kathryn Choate, and Randy Smith, maintained a primary caseload at OSD. One counselor, Ms. Ripberger, maintained her primary caseload at the Reformatory. Ms. Ripberger disputes that her caseload was at the Reformatory, and asserts that she provided therapy to all levels of offenders, including at OSD. However, it is undisputed that between March 2010 and August 2010, Ms. Ripberger was the only counselor serving the Reformatory and she did not provide services to any inmates outside of those in the Reformatory.

E.  **Corizon's Hiring Process for IDOC Substance Abuse Recovery Employees**

   1.  **Application and Interview Process**

As stated earlier, after the privatization was announced, IDOC employees interested in positions with Corizon were required to submit an application and be interviewed. Corizon representatives visited facilities on August 16 through 18, 2010. The Corizon representative sent to Pendleton was Royace Gibson and she conducted interviews along with Mary Mansfield, who worked for IDOC. Corizon was interested in maintaining the current employees, so the main purpose of the interviews was to ascertain which IDOC employees were interested in securing employment with Corizon. Thus, the interviews did not focus on background experience or education.

Ms. Ripberger submitted an application with Corizon, as requested. She was not told where her interview would take place; however, she was interviewed by Ms. Gibson and Ms. Mansfield. During the interview, Ms. Ripberger was asked only why she wanted to be a

substance abuse counselor and the interview lasted just ten minutes.  Ms. Ripberger believes it was not a true interview.

### 2. The Hiring Decision Process

Except for those counselors on the do-not-hire list, Corizon desired to hire as many IDOC counselors as it had positions.  Specifically, Corizon wanted to maintain continuity of care within the prisons to avoid disrupting the prisoners' care.  At facilities where more applicants applied than Corizon had available positions, Corizon offered applicants an open position at the next closest facility.  As stated above, Mr. Schoenradt was in charge of making hiring and placement decisions.

All seven of the substance abuse counselors working in the Reformatory, OSD, and CIF at Pendleton applied and interviewed with Corizon.  However, Mr. Smith was on military leave until August 18, 2010 so he applied and was interviewed several days after the other employees.  Previously, Mr. Schoenradt had determined that Corizon would not provide counseling services to inmates in the Reformatory; thus, Corizon only had six positions available to serve OSD and CIF.  Because Mr. Thomas, Ms. Massey-Neskov, Ms. Sasin, Ms. Diggins, Ms. Choate, and Mr. Smith each had active caseloads in OSD and CIF, they were offered employment with Corizon at Pendleton.  Because Ms. Ripberger only had an active caseload in the Reformatory, which was being eliminated, she was not offered a position at Pendleton.  Again, Corizon's stated reason for making this decision was to maximize continuity of care.

A Corizon recruiter called Ms. Ripberger on August 19, 2010 and informed her she would not be employed at Pendleton.  However, the recruiter told Ms. Ripberger there were positions available at the Miami and Putnamville facilities, and asked if she was interested in those positions.  Ms. Ripberger told the recruiter not to call her again and hung up the telephone.

Several days later, in an email exchange, Mr. Schoenradt reiterated to Ms. Ripberger that there were open positions at the Miami facility if she was interested. Mr. Schoenradt believed, though he did not tell Ms. Ripberger, that because Miami was receiving more Level 4 offenders, Ms. Ripberger would be a good fit at that facility. Ms. Ripberger stated that she lived near Pendleton and did not want to travel, thus she declined interest in any other position.

## F.     Ms. Ripberger's Support of Connie Orton-Bell

Ms. Ripberger's former supervisor, Connie Orton-Bell ("Ms. Orton-Bell"), was terminated sometime in the spring of 2010. Ms. Ripberger aided Ms. Orton-Bell in filing a State Employees' Assistance Commission ("SEAC") complaint. She also attended three hearings as a silent witness for Ms. Orton-Bell, including a final hearing on August 19, 2010. Several IDOC employees at Pendleton approached Ms. Ripberger to find out information about Ms. Orton-Bell, including Mr. Schoenradt. Ms. Ripberger believes that Pendleton Superintendent Alan Finnan sent those employees to find out what Ms. Orton-Bell was doing in her case against Pendleton.

At the August 13, 2010 meeting at which IDOC announced that counseling services would be privatized, Ms. Ripberger spoke with Superintendent Finnan and Mr. Schoenradt. Ms. Ripberger had a feeling her support of Ms. Orton-Bell would negatively affect her employment chances after the privatization. Acting on this feeling, Ms. Ripberger told Superintendent Finnan, "I'm kind of feeling on the short end of the stick here." Dkt. 58-1 at 51, 73:20–21. He responded, "There might be a reason for that." Dkt. 58-1 at 51, 73:23–24. She then asked Mr. Schoenradt where she would be placed, and he responded that he had an idea. Then, Superintendent Finnan asked to speak with Mr. Schoenradt privately, and the two left from Ms. Ripberger's presence. Mr. Schoenradt does not recall having this specific conversation with Ms. Ripberger, as he spoke to many IDOC employees and answered numerous questions that day.

On August 19, 2010 Ms. Ripberger encountered Superintendent Finnan as he testified at Ms. Orton-Bell's hearing before the SEAC. To Ms. Ripberger, he appeared irritated and had a negative demeanor toward her. However, he and Ms. Ripberger did not have any conversation. Soon after Superintendent Finnan completed his testimony, Ms. Ripberger received the call from the Corizon recruiter informing her she was not hired at Pendleton. Mr. Schoenradt did not attend any of Ms. Orton-Bell's hearings. He also told Ms. Ripberger he would write Ms. Orton-Bell a letter of recommendation because he believed Ms. Orton-Bell was a good worker.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the

material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

Ms. Ripberger mistakenly argues that Corizon applied the wrong standard of review in its motion. The standard cited by Ms. Ripberger is applied by the Court and Corizon is not required to argue its own case in the light most favorable to Ms. Ripberger.

### III.  DISCUSSION

A.  **Ms. Ripberger's Surreply**

As an initial matter, the Court will address Corizon's objections to Ms. Ripberger's surreply. Corizon has objected to Ms. Ripberger's 25-page surreply on the basis it was in violation of the page limitation for responses, did not respond to new evidence or arguments, and rehashed prior arguments made in her response. Ms. Ripberger then filed a motion for leave to file a 20-page amended surreply. The Court always tries to allow litigants a full and fair opportunity to respond to arguments made by their adversary, including allowing surreplies. *See e.g., Pike v. Caldera*, 188 F.R.D. 519, 535–36 (S.D. Ind. 1999). With this in mind, the Court **GRANTS** Ms. Ripberger's motion for leave to file her amended surreply (Dkt. 80), and therefore Corizon's motion to strike the original surreply (Dkt. 78) is **DENIED as moot.**

However, much of Corizon's arguments to strike on the merits still apply to the amended surreply. Therefore, the Court *sua sponte* finds that the surreply is mostly a rehash of previously made arguments which reiterates evidence found in Ms. Ripberger's response. The Court has disregarded the portions of the surreply which are improper and has not relied upon them in this Entry.

B.  **Title VII**

1. **Legal Principles**

It is well-established that a plaintiff may prove discrimination under Title VII in one of two ways: either through direct evidence, or indirectly through the burden-shifting mechanism of *McDonnell Douglas*. *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Under the direct method, a plaintiff may proffer direct or circumstantial evidence to prove discrimination. Direct evidence establishes "the fact in question without reliance on inference or presumption." *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (citation omitted). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence which "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (citation and internal quotations omitted). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Id*. (citation and internal quotations omitted).

Alternatively, a plaintiff can use the indirect method of proof, which consists of three basic steps: (1) a plaintiff must establish a *prima facie* case of discrimination based on sex, (2) if she does so, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse action, and (3) the plaintiff must then come forward and show the stated reason is pretextual. *See Henderson*, 207 F.3d at 376. A plaintiff establishes a *prima facie* case by establishing evidence that would allow a reasonable jury to find on each claim that: (1) she is a member of a protected class; (2) she applied for and was qualified for the position; (3) she was rejected for the position sought; (4) the position was granted to an individual outside of the protected class who was either similarly qualified or less qualified than plaintiff. *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003).

2. **Ms. Ripberger's Claim**

Ms. Ripberger proceeds under the indirect method of proof.[1] Corizon contends that she cannot prove the third or fourth element of a *prima facie* case. Specifically, Corizon argues that Ms. Ripberger declined employment, but was not rejected, and that it did not fill Ms. Ripberger's former position with another employee. Ms. Ripberger disputes that she declined employment with Corizon, but instead was denied a position at Pendleton. The Court agrees with Ms. Ripberger. Although it is true that Corizon told Ms. Ripberger there were open positions at Miami or Putnamville, Ms. Ripberger applied for a position at Pendleton and did not want to be considered for positions at other facilities. Corizon argues that because Ms. Ripberger did not specify a location on her application, her position fails. But there is no indication that Corizon put Ms. Ripberger on notice that by submitting an application she was applying statewide, and not just to Pendleton as she intended. Therefore, the Court finds Ms. Ripberger was rejected for a position at Pendleton thus she has satisfied the third element of a *prima facie* case.

The fourth element is a more difficult question to answer. Corizon argues that because Ms. Ripberger had an exclusive Reformatory caseload at the time of privatization, and it eliminated substance abuse services to the Reformatory, her position was eliminated. Thus, no one was hired to fill her position. Ms. Ripberger has acknowledged as much, noting at her deposition that the Reformatory program was completely shut down. Dkt. 58-1 at 54, 76:14–17. Ms. Ripberger, though, takes a wider view arguing that there were six open positions at Pendleton and people outside the protected class were hired to fill those positions. Ms.

---

[1] The Court acknowledges, as did *Roe v. Target Corp.*, No. 1:11-cv-0555-JMS-TAB, 2012 WL 3257891 (S.D. Ind. Aug. 8, 2012), Judge Wood's concurrence in *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012). In *Coleman*, Judge Wood calls for collapsing the direct and indirect method of proofs into a single test. *Id.* at 863 (Wood, J. concurring). The Court agrees with the discussion in *Roe*, that "[b]ecause circumstantial evidence may be used under either of these approaches, the distinction between the two is often tough to discern. However, until the muddy water of evidentiary proof in discrimination cases is cleared by a complete abandonment of two separate 'proof' methodologies, such as proposed by Judge Wood in her concurrence in *Coleman,* the trial courts must soldier on, wading through the swampy areas of overlap in both evidence and legal theory." *Roe*, 2012 WL 3257891, at *13 (citation omitted).

Ripberger's specific argument is difficult to discern, as her argument in opposition consists of just two paragraphs that fail to identify specifically who was outside of her class and was less-qualified. However, from the entirety of the evidence it is apparent that she contends Mr. Smith, who had less experience and no certification, was hired instead of Ms. Ripberger. She has presented evidence that Mr. Smith did not have the level of experience, certification, and overall qualifications as did Ms. Ripberger. Therefore, the Court finds that in the light most favorable to Ms. Ripberger, there were six open positions at Pendleton and a less-qualified male was hired instead of Ms. Ripberger, satisfying the fourth element of a *prima facie* case.

Next, it is Corizon's burden to provide a legitimate, nondiscriminatory reason for not hiring Ms. Ripberger. Corizon has produced evidence that when it was awarded the contract from IDOC, its goal was to maintain continuity of care to offenders by hiring as many incumbent substance abuse counselors as possible. In particular, at Pendleton, Corizon chose to discontinue counseling services in the Reformatory where Ms. Ripberger had been working. It is undisputed that in August 2010, Ms. Ripberger's caseload consisted only of inmates in the Reformatory and not in CIF or OSD. Dkt. 67-12 at 25, 90:17–20. In contrast, Mr. Smith's case load was in CIF and OSD, but he had no clients—nor did any Pendleton substance abuse counselor other than Ms. Ripberger—in the Reformatory. Dkt. 58-1 at 105–07, 145:25–146:24. Therefore, Corizon has articulated a nondiscriminatory reason for its action: continuity of care dictated that the applicant with a caseload in the areas Corizon was staffing, CIF and OSD, should be hired.

Thus, Ms. Ripberger bears the burden of establishing that Corizon's proffered reason is pretextual. To show pretext, Ms. Ripberger must show that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent. . . . To survive summary judgment, however, the plaintiff need only offer

11

evidence that supports an inference that the employer's nondiscriminatory reason for its action was dishonest." *U.S. E.E.O.C. v. Target Corp.*, 460 F.3d 946, 960 (7th Cir. 2006). Courts grant summary judgment only "where no rational fact finder could believe that the employer lied about its proffered reasons for the hiring decision in question." *Id.* (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 726 (7th Cir. 2005)). Here, Ms. Ripberger does not argue or point the Court to evidence that she was not hired because she was a woman. The only cognizable evidence supporting pretext deals with retaliation, and there is simply no evidence that Ms. Ripberger was discriminated against because of her sex. Therefore, Corizon's motion for summary judgment on Ms. Ripberger's Title VII claim is **GRANTED**.

**C.    The ADEA**

    **1.    Legal Principles**

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The protections of the ADEA are limited to individuals over the age of forty. 29 U.S.C. § 631(a). A plaintiff can survive summary judgment under either the direct or indirect evidence method. "Taken literally, direct evidence would require an admission by the employer, but [courts] also permit circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'" *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004)). Fundamentally, "the plaintiff must connect the circumstantial evidence to the employment action such that a reasonable juror could infer the employer acted for discriminatory reasons." *Id.* Plaintiffs must show evidence "that could support a jury verdict that age was a but-for cause of the employment action at the summary judgment stage." *Id.* at 604. Examples of such circumstantial evidence include suspicious

timing; ambiguous statements, behavior, or comments directed towards other employees in the protected age group; systematically better treatment of employees outside the protected age group; and pretextual reasons given for the adverse employment action. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114–15 (7th Cir. 2009).

Under the indirect method, plaintiffs first must establish a *prima facie* case of age discrimination by showing that (1) she was a member of the protected age group of persons forty or older, (2) she applied for and was qualified for the position she sought, (3) she was rejected for the position, and (4) similarly situated "substantially younger" employees were hired. *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675 (7th Cir. 2003). If the plaintiff establishes all elements of the *prima facie* case, the burden shifts to the employer to articulate a non-discriminatory reason for the employee's termination. *Hoffman v. Primedia Special Interest Publ'ns.*, 217 F.3d 522, 524 (7th Cir. 2000). The plaintiff then may seek to show that the purported reason for termination is "false and only a pretext for discrimination." *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008).

### 2.     Ms. Ripberger's Claim

Again, Ms. Ripberger proceeds under the indirect method of proof. Corizon argues, as it did with the Title VII claim, that Ms. Ripberger cannot satisfy the third and fourth elements of a *prima facie* case of age discrimination. As for the third element, the parties make the same arguments as above. Likewise, the Court finds that Ms. Ripberger has established the third element that she was rejected for the position.

As for the fourth element, the Court notes that again Ms. Ripberger fails to specifically point to persons outside the protected class who were similarly or less qualified. However, the Court can identify from the entirety of the evidence that Ms. Ripberger alleges Ms. Diggins (age

57), Ms. Sasin (age 51), Ms. Massey-Neskov (age 43), Ms. Choate (age 28), and Mr. Smith (age 48), were all younger and less qualified.[2] In the age discrimination context, "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). At the very least, Ms. Choate was outside the protected class and Ms. Massey-Neskov and Mr. Smith were also more than 10 years younger than Ms. Ripberger. It also appears from the evidence that Mr. Smith and Ms. Choate did not have the level of qualifications and experience of Ms. Ripberger. Therefore, the Court makes the same finding as above: when viewing the evidence in the light most favorable to Ms. Ripberger, she has established there were six open positions at Pendleton and younger, less qualified employees were hired instead of Ms. Ripberger.

Proceeding to the next step, the Court again finds that Corizon articulated a legitimate, nondiscriminatory reason for not hiring Ms. Ripberger. Specifically, the applicants with a caseload in the areas Corizon was staffing, CIF and OSD, were to be hired to maintain continuity of care. Thus, Ms. Ripberger bears the burden of establishing that Corizon's proffered reason is pretextual. There is absolutely no evidence that Corizon's reason was dishonest and was truly based on discrimination because of Ms. Ripberger's age. Therefore, Corizon's motion for summary judgment on Ms. Ripberger's ADEA claim is **GRANTED**.

**D.     Retaliation**

   **1.     Legal Principles**

Although Ms. Ripberger's discrimination claims fail, she may still pursue her claims for retaliation. "Unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination." *Rogers v. City of Chi.*, 320

---

[2] These ages were as of August 2010. In August 2010, Ms. Ripberger was 59 years old.

F.3d 748, 753 (7th Cir. 2003) (citations omitted). Discrimination and retaliation claims are distinct, and "a claim of retaliation does not depend on proof that any status-based discrimination actually occurred." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 460 (2008).

As with a discrimination claim, a plaintiff asserting a claim of retaliation under Title VII or the ADEA may choose to prove her case under either direct or indirect methods of proof. *See Barton v. Zimmer, Inc.*, 662 F.3d 448, 455–56 (7th Cir. 2011); *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). Under the direct method, the plaintiff must present evidence that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).

Under the indirect method, the plaintiff must establish a *prima facie* case by showing that (1) she engaged in protected activity; (2) she applied and was qualified for the position; (3) she was not hired for the position; and (4) a similarly situated individual who did not engage in the protected activity was hired. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 812 (7th Cir. 2005). In determining whether retaliation has occurred, the Court is not required to consider "the nature of the discrimination that led to the filing of the [underlying] charge." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006).

### 2. Ms. Ripberger's Claim

Ms. Ripberger asserts that because Corizon did not argue that her claim fails under the direct method of proof, that its motion must be denied. However, it is Ms. Ripberger's burden to establish her claim, and she also provides no argument or evidence under the direct method. Therefore, the Court proceeds under the indirect method rather than simply denying Corizon's motion.

Corizon contends that Ms. Ripberger cannot establish a *prima facie* case because Corizon did not fail to hire Ms. Ripberger. As discussed above, Ms. Ripberger contends she believed she applied only for a position at Pendleton; thus, when she was denied a position at Pendleton, Corizon failed to hire her. Taking the facts most favorable to Ms. Ripberger, Corizon failed to hire her. Corizon does not challenge any other element of Ms. Ripberger's *prima facie* case. Therefore, the Court will proceed to the next step.

Corizon bears the burden of demonstrating it had a legitimate, nondiscriminatory reason for its treatment of Ms. Ripberger. Corizon provides the same reason as discussed above. The Court again finds that Corizon has articulated a legitimate, nondiscriminatory answer that it desired continuity in the care of its patients. Thus, Ms. Ripberger must show pretext to survive summary judgment.

Ms. Ripberger contends that she was not hired because she assisted in the filing and hearings for Ms. Orton-Bell's sex discrimination employment complaint. Specifically, she argues that Ms. Mansfield told her that she was fired for assisting Ms. Orton-Bell. Ms. Mansfield was an IDOC employee that sat in on interviews with Ms. Gibson, including Ms. Ripberger's. Ms. Mansfield and Ms. Ripberger had lunch together on Ms. Ripberger's last day of work. At their lunch, the two discussed that they both believed Ms. Ripberger was not hired because she assisted Ms. Orton-Bell. However, there is no evidence that Ms. Mansfield was involved in the hiring process, other than interviews, or that her statement was more than a belief. Therefore, Ms. Mansfield's statements are considered mere speculation.

Additionally, Ms. Ripberger argues that Superintendent Finnan had some control over the hiring decisions and he was aware of her involvement with Ms. Orton-Bell. Ms. Ripberger alleges Superintendent Finnan told her she was on the short-end of the stick on August 13, 2010.

16

However, Ms. Ripberger's allegation misconstrues her own deposition testimony.  *See* Dkt. 58-1 at 51, 73:20–24.  It was Ms. Ripberger who made an "innuendo" about helping Ms. Orton-Bell by telling Superintendent Finnan, "I'm kind of feeling on the short end of the stick here."  Dkt. 58-1 at 51, 73:20–21.  In turn, Superintendent Finnan responded, "There might be a reason for that."  Dkt. 58-1 at 51, 73:23–24.  Although the Court agrees this response is puzzling, it is incorrect for Ms. Ripberger to repeatedly allege that Superintendent Finnan told her "she was on the short end of the stick."  Dkt. 72 at 3, 16, 19, 26.  Additionally, Ms. Ripberger alleges Superintendent Finnan told Mr. Schoenradt not to hire her on August 13, 2010 because the two men spoke in private.  Further, she alleges that Superintendent Finnan became irritated and negative toward her at Ms. Orton-Bell's August 19, 2010 hearing.  And, a short time after Superintendent Finnan left the hearing Ms. Ripberger received the call from the Corizon recruiter informing her she was not hired at Pendleton.

These allegations are based on speculation.  Ms. Ripberger observed Superintendent Finnan and Mr. Schoenradt leave her presence to speak in private, but she has no knowledge of their conversation.  She also observed Superintendent Finnan on August 19, 2010, and perceived him to be irritated at her, but she does not allege that he spoke to her.  Nor does she have any actual knowledge about the cause of his irritation.  Finally, Ms. Ripberger's allegation that Superintendent Finnan had "say so" in Corizon's hiring decisions is not supported by any evidence except her own speculation.

Furthermore, the evidence establishes that Mr. Schoenradt made the hiring decisions for Corizon.  His affidavit affirms that "[a]t no time while making the hiring and placement decisions did I consider [Ms.] Ripberger's participation in a grievance filed by her former IDOC supervisor, Connie Orton-Bell, against IDOC."  Dkt. 58-5 at 4.  The body of evidence supports

Mr. Schoenradt's statement. Ms. Ripberger's claim for retaliation relies upon her speculation that Superintendent Finnan told Corizon, through Mr. Schoenradt, not to hire Ms. Ripberger. Statements by those uninvolved in the decision making process are mere speculation and do not constitute evidence of discrimination. See *Swanson v. Leggett & Platt, Inc.* 154 F.3d 730, 733 (7th Cir. 1998). And, speculation about an uninvolved third party is not evidence "that supports an inference that the employer's nondiscriminatory reason for its action was dishonest." *Target Corp.*, 460 F.3d at 960. Therefore, Corizon's motion for summary judgment on the retaliation claim must be **GRANTED**.

## IV. CONCLUSION

The Court acknowledges that Ms. Ripberger was a qualified and capable substance abuse counselor. She was an unfortunate victim of a reduced workforce following the privatization of substance abuse counseling in Indiana prisons. Yet despite the Court's sympathies, it cannot find that Ms. Ripberger was a victim of discrimination or retaliation. Thus, for the reasons set forth above, Corizon's Motion for Summary Judgment (Dkt. 56) is **GRANTED**. Corizon's Motion to Strike (Dkt. 78) is **DENIED** and Ms. Ripberger's Motion for Leave to File Amended Surreply (Dkt. 80) is **GRANTED**. The Clerk is ordered to file Ms. Ripberger's Amended Surreply as of the date of this Entry. A separate judgment will follow.

**SO ORDERED.**

Date: 04/17/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Edward E. Hollis
FAEGRE BAKER DANIELS LLP - Indianapolis
edward.hollis@faegrebd.com

Toni M. Everton
FAEGRE BAKER DANIELS LLP - Indianapolis
toni.everton@faegrebd.com